CITY OF BANGOR *vs.* JAMES S. ROWE and others.

Under R. S., c. 14, § 16, the " owner " of land is liable for the expenses of removing a nuisance therefrom, although a tenant for a term of years caused the nuisance, and continued to be the "occupant" of the premises under his lease when the nuisance was removed.  [WALTON, BARROWS, and DANFORTH, JJ., dissenting.]

ON FACTS AGREED.

Action against the alleged owners of certain lands in Bangor to recover the expenses of removing therefrom a nuisance, consisting of filthy " cellars, privies, yards, drains, hog-styes, sink-drains, and decaying animal and vegetable matter."

The expenditures sought to be recovered were rightfully made, and notices were duly served upon the defendants.

The land, on which the nuisances existed, consisted of ten small lots belonging to the late William Emerson in his lifetime, and was leased by him to various persons, for the term of five years.  All the buildings, standing on the premises at the date of the notice for removal, were erected by the lessees during the lifetime of Emerson, and the leases were in force at the time of his death.

By his last will and testament, Emerson devised the premises to the defendants as residuary devisees, who have renewed the several

leases, and they have never been in possession of the land, or buildings thereon, but the lessees have ever been rightfully in possession under their leases.

The court to render judgment by nonsuit or default, as they shall find the legal rights of the parties.

*Charles Hamlin,* for the plaintiff.

*Rowe,* for the defendants.

The defendants were the " owners " of the reversionary interest in the naked land, having no interest in any erections, betterments, or improvements, all of which belonged to the lessees and " occupants."

The nuisance was the filthy state of the property of the " occupants."

The " private property," as used in R. S., c. 14, § 16, was in the case at bar, the erections, shops, houses, and curtilages thereof belonging entirely to the " occupants."

A landlord is not bound to clean out the privy of his tenant, and see that the latter's hog-styes and drains emit no offensive odor. Neither has he a right to enter the premises and discontinue his tenant's pig-pen, privy, or drain.

The " owner " of land, in a strict sense, is one in possession, having the unincumbered fee-simple.

In common use, the term is applied to the holders of several of the lesser estates carved out of the fee. In the statute giving damages to the " owner " of land taken for a street, the term " owner " includes " every person having an interest in the land either as lessee for years, tenant for life, or for any greater estate of freehold, as also being in reversion or remainder." · *Ellis* v. *Welch*, 6 Mass. 246.

" There may be a lease for years to one, with a life-estate to another, and a vested remainder in a third, each of whom will sustain damage by taking a part of the estate " in widening a street, each of whom is an " owner."

Same meaning is given to " owner " in statutes providing for

compensation for land taken by railroad corporations. *Gilbert* v. *Hasemayer*, 2 Sandf. 506. *Balt. & Ohio Railw.* v. *Thompson*, 10 Md. 76, cited in 1 Redfield on Railways (Ed. 1867), 349.

. In an indictment, founded on Pub. Laws of 1825, c. 312, for maliciously injuring a dwelling-house not having the consent of the " owner " thereof, he who occupies the house under a parol agreement, is the " owner." *State* v. *Whittier*, 21 Maine, 341.

Occupant is owner under R. S., c. 131, § 10; and, in this sense, the lessees were the only owners intended in R. S., c. 14, § 16.

The object of R. S., c. 14, § 16, is to enforce the performance of the moral duty which the common law has embodied in its maxim, *sic utere tuo*, &c. The party to perform the duty is the occupant, if there be one.

" The cleansing and repairing of drains and sewers is, *prima facie*, the duty of him who occupies the premises, and does not devolve upon the owner merely as such." *Russell* v. *Shenton*, 43 Eng. C. L. 814. *Cheatham* v. *Hampson*, 4 T. R. 318.

Owner, as used in this statute, implies one having the right of possession. Did the legislature intend to make an omission and misdemeanor in one who has no legal right to the act omitted. If the land was leased for 999 years at an annual rent, are the successive generations of the holders of the reversion to be liable under this statute ?

How would it be in case of disseisin; would the owner, while kept out of possession and using all means to recover, be subject to a penalty for not removing the filth made by the disseisor ?

CUTTING, J. This case was brought against the defendants as alleged owners of certain lands and buildings in the city of Bangor, under R. S., c. 14, § 16, which provides that,—

" When any source of filth, or other cause of sickness, is found on private property, the owner or occupant thereof shall, within twenty-four hours after notice from said officer, at his own expense, remove or discontinue it; and if he neglects, or unreasonably delays to do so, he shall forfeit not exceeding one hundred dollars;

and said committee or officer shall cause said nuisance to be removed or discontinued; and all expenses thereof shall be repaid to the town by such owner or occupant, or by the person who caused or permitted it."

The case finds that a due notice was given, a neglect on the part of the defendants, and a removal of the nuisance by the municipal officer, the expenses of which are sought to be recovered in this action.

The principal ground for defense set up is, that the premises were leased to certain individuals, who created or suffered the nuisance, for whose acts the defendants are not responsible. Whether they be so or not depends upon the construction of the statute.

The remedy against the owner or occupant, in common parlance, would be construed to be against either at the option of the officer, as he should decide as to the responsibility of the respective parties; for it is notorious that many occupants under owners are totally irresponsible, and are only suffered to occupy except on condition of paying rent in advance. The statute implies that the owner can select his own tenants, and impose upon them all reasonable restrictions; but the town has no such authority. Such a contingency must have been contemplated by the legislature, therefore, to avoid the evil, and to afford a speedy and ample remedy, the term owner or occupant was inserted in the law.

But it is contended that the occupant is the owner for the time being. If such be the construction, then one of those words becomes either superfluous or synonymous. Such is not to be inferred, and such is opposed to their respective definitions.

"*Occupant.* One who has the actual use or possession of a thing."—Bouvier, *Law Dic.*

"*Owner.* The right of the owner is more extended than that of him who has only the use of the thing."—*Ib.*

*Defendants defaulted.*

Appleton, C. J.; Kent, Dickerson, and Tapley, JJ., concurred.

WALTON, BARROWS, and DANFORTH, JJ., declared their views in the following dissenting opinion drawn by DANFORTH, J.

This action is founded upon c. 14, § 16, R. S. It is conceded that the plaintiffs, through their board of health, have done all that is necessary to give them a cause of action against some party; and the only question is, whether the defendants are the persons liable. This depends upon the meaning of the word "owner," as used in the section referred to. The case finds that, at the time of the injury complained of, the defendants were the owners of the land described, subject to an outstanding lease for a term of years. The cases cited by the counsel for defendants, as well as the definition of the word as given by lexicographers, show that the lessees were owners of the land for the terms described in their several leases. Both the defendants, then, and their lessees were owners of different interests in the land described in the writ; the one as absolutely so as the other. But who were the owners of the interest upon which the nuisance was permitted? Evidently those who have the present right of possession, the ownership for the time being, and not those whose right to the occupancy and control of the premises rests in the future, and has no present existence. If the nuisance complained of had been caused by a stranger, so as to have given a right of action against him, that action could have been maintained only by the lessees, for it was an injury to their interests alone. The lessees, then, are the sole owners of the property in relation to the nuisance, and the inference would seem to be inevitable, that in a case like the present, the statute has reference to them alone.

This view is very much strengthened by other words in the section referred to. The same persons, who are liable to pay the expense of removal, are also liable to a penalty not exceeding one hundred dollars. This liability accrues only after notice and "neglect or unreasonable delay" in removing the nuisance; in other words, only after a wrong has been done, a duty omitted. How can that be a duty which the party has no legal right to do. Though these defendants, in their leases, reserved a right of entry

for certain purposes, they had no such right for the purpose of removing this nuisance. In this respect they were mere strangers. The nuisance caused no injury to their interest in the land, and gave them no rights, except such as pertained to the public generally. It follows, that a "neglect or unreasonable delay" to remove the nuisance is a wrong which cannot legally be imputed to these defendants.

Our conclusion is, that the action cannot be maintained.

WALTON, and BARROWS, JJ., concurred.